UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

TAMMY SUTTLES,  Case No. 1:12-cv-658

    Plaintiff,  Spiegel, J.
        v.  Bowman, M.J.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

**REPORT AND RECOMMENDATION**

Plaintiff Tammy Suttles filed this Social Security appeal in order to challenge the Defendant's determination that she is not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents four claims of error, all of which the Defendant disputes. As explained below, I conclude that the ALJ's finding of non-disability should be REVERSED because it is not supported by substantial evidence in the administrative record.

**I. Summary of Administrative Record**

Plaintiff filed an application for Supplemental Security Income ("SSI") in March 2007, alleging disability beginning on February 10, 2001 due to physical impairments. After Plaintiff's application was denied initially and upon reconsideration, she requested a hearing *de novo* before an Administrative Law Judge ("ALJ"). At some point in the administrative process, Plaintiff clarified her claim to explain that she was claiming disability due to a combination of mental and physical impairments. At a hearing held in June 2010, ALJ John T. Kelly heard testimony from Plaintiff and from a vocational

1

expert. On July 29, 2010, the ALJ denied Plaintiff's application in a written decision, concluding that Plaintiff was not disabled. (Tr. 16-24). The Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision as the Defendant's final determination.

Plaintiff was 43 years old at the time of the ALJ's decision, with a limited education, having dropped out of school after the ninth grade. (Tr. 23). She previously worked as a custodian, general laborer, and patient assistant, but has not engaged in substantial gainful activity since her alleged disability date. Based upon the record and testimony, the ALJ found that Plaintiff has the severe impairments of: "chronic low back pain, traumatic and degenerative joint disease of the left shoulder, and low-end borderline intellectual functioning." (Tr. 18). These impairments did not alone, or in combination with any other impairments, meet or medically equal one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (Tr. 19). Rather, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform:

> a moderate amount of sitting, ambulating, standing, bending, kneeling, pushing, pulling, lifting, and carrying heavy objects, and fine and gross manipulation, but she would have difficulty reaching overhead with the left upper extremity. There are no visual and/or communication limitations nor are there environmental limitations. Mentally, the claimant retains the capacity to understand, remember, and follow simple one or two-step job instructions, to relate to bosses, coworkers, and the public, and to tolerate the stress of day-to-day employment. Her ability to sustain attention and concentration to complete daily work tasks is mildly impaired.

(Tr. 21). The ALJ concluded that, while Plaintiff had no past relevant work, she could still perform "jobs that exist in significant numbers in the national economy," including, as testified to by the vocational expert, the light and sedentary jobs of packer, inspector/sorter, machine tender, and production worker. (Tr. 23-24). Accordingly, the

2

ALJ determined that Plaintiff is not under disability, as defined in the Social Security Regulations, and is not entitled to SSI. (Tr. 24).

On appeal to this Court, Plaintiff argues that the ALJ erred: (1) because the decision is "illogical and internally inconsistent" concerning Plaintiff's psychological impairments; (2) by failing to adequately define Plaintiff's RFC including her exertional level; and (3) by failing to find Plaintiff met or equaled Listing 12.05C. In her fourth assignment of error, Plaintiff argues that in addition to remand under Sentence Four for the first three errors, she is entitled to remand under Sentence Six for consideration of "new and material evidence." The undersigned agrees that remand is required.

## II. Analysis

### A. Judicial Standard of Review

To be eligible for SSI benefits, a claimant must be under a "disability" within the definition of the Social Security Act. *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal

3

quotation omitted).  In conducting this review, the court should consider the record as a whole.  *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978).  If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability.  *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).  As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion . . . .  The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts.  If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy.  *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.  However, a plaintiff bears the ultimate burden to prove by sufficient evidence that he or she is entitled to disability or supplemental security benefits.  *See* 20 C.F.R. § 404.1512(a).

4

**B. Plaintiff's Assertions of Error**

**1. Inconsistencies in the ALJ's Evaluation of Mental Impairment**

Plaintiff first argues that the ALJ's decision contains internal inconsistencies regarding the degree of Plaintiff's mental impairments. Plaintiff claims two distinct mental impairments: a) mental illness; and b) cognitive impairment. The ALJ first determined that Plaintiff suffered from depression and anxiety, but that her mental illness was not "severe" because it did not "cause more than minimal limitation in the claimant's ability to perform basic mental work activities." (Tr. 18). On the other hand, the ALJ agreed that Plaintiff suffered from a "severe" cognitive impairment, even though the ALJ disagreed with Plaintiff's post-hearing argument that the severity of that impairment met or equaled Listing 12.05C. (Tr. 20).

In the first section of his opinion, concerning Plaintiff's depression and/or anxiety, the ALJ relied on the consulting opinion of examiner Dr. Rosenthal to rate Plaintiff's ability to maintain concentration, persistence, and pace as only "mildly" impaired, (Tr. 18-19). By contrast, when describing Plaintiff's cognitive impairment, the ALJ relied upon the opinion of consulting examiner Dr. Nelson to rate Plaintiff's ability to maintain attention, concentration, persistence and pace is "moderately" impaired. (Tr. 20-21). Ultimately, in formulating Plaintiff's RFC, the ALJ concluded that Plaintiff was only "mildly" impaired. (Tr. 21). Plaintiff argues that this "flip-flopping" between findings of mild and moderate impairment, for the same work-related ability to maintain attention, concentration, persistence and pace, is improper and requires remand for clarification. I agree.

5

The Commissioner argues that the error was harmless because "a reading of the decision as a whole makes clear that the ALJ's statement that Plaintiff had a 'mild' limitation [in attention, concentration, persistence and pace] at step two, and therefore had no 'severe' mental impairment, was simply a scrivener's error." (Doc. 11 at 8). However, it would be improper for this Court to take such a liberal interpretative stance concerning this somewhat glaring error, particularly in light of the other errors in the record.

### 2. Overly Vague Residual Functional Capacity Assessment

Plaintiff's second assignment of error also warrants remand. First, the ALJ failed to specify Plaintiff's exertional level. Ordinarily, an ALJ must indicate whether a claimant can perform sedentary, light, medium, or heavy work. In this case, the ALJ merely repeated consultant Dr. Fritzhand's finding that the Plaintiff can perform a "moderate amount" of various physical activities. (Tr. 21). The Defendant concedes that this statement is "vague."

The ALJ also failed to include postural limitations corresponding with Plaintiff's diminished range of motion in her back, hips, and knees, all of which were documented by consulting examiner Dr. Fritzhand. (Tr. 259-266). The ALJ further failed to specify limitations concerning Plaintiff's ability to reach overhead with her upper left arm, and failed to discuss Plaintiff's asserted need for a sit/stand option.

Defendant argues that notwithstanding the ALJ's failure to specify Plaintiff's exertional level and other limitations in his written opinion, this Court should again excuse the "relative opacity of his RFC finding" as harmless error. (Doc. 11 at 7). The Defendant points out that, at the evidentiary hearing, the ALJ was more explicit in his

6

hypothetical to the vocational expert. The transcript of that hearing reflects that the ALJ asked the VE to assume an individual with limitations consistent with "Exhibit 4F," an apparent reference to the Physical Residual Functional Capacity Assessment form - not by Dr. Fritzhand, whose limitations the ALJ appears to have adopted - but by Jeffrey Vasiloff, M.D., who identified a different set of limitations consistent with a range of *medium* work. However, the ALJ then instructed the VE to assume that the Plaintiff was limited to light work. (Tr. 60-61). The Plaintiff persuasively argues that none of the variations in the hypothetical posed to the VE at the hearing come close to matching the RFC ultimately found by the ALJ in his opinion. Thus, the overly vague RFC finding cannot be "combined" with hearing testimony in any coherent manner so as to remedy this error harmless.

### 3. Alleged Error in Assessment of Cognitive Impairment and Sentence Six

In her third assignment of error, Plaintiff asserts that the ALJ failed to provide sufficient reasons for his determination that she did not meet or equal Listing 12.05C, for mild mental retardation. In her related fourth assignment of error, Plaintiff argues that remand under Sentence Six is required, because recently obtained school records and other evidence shows that she meets the criteria for presumptive disability under Listing 12.05C. For the convenience of the Court, these two assertions of error are discussed together.

The Listing for mental retardation, contained in 20 C.F.R. Part 404, Subpart P, Appendix 1, states:

> 12.05 Mental retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports an onset of the impairment before age

7

> 22. The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> ...C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

*Id*.

In *Foster v. Halter*, 279 F.3d 348 (6th Cir. 2001), the Sixth Circuit clarified that in addition to a qualifying IQ score, a claimant is required to satisfy the "adaptive functioning" standard in order to meet Listing 12.05C. In *Foster*, the plaintiff had dropped out of school after the ninth grade and had two sets of qualifying IQ scores, but did not satisfy Listing 12.05 because there was no evidence of deficits in adaptive functioning before age 22, and because her prior work demonstrated an "ability to perform relatively complicated tasks." *Id*. at 355. Therefore, in order to meet Listing 12.05, a plaintiff must show: "(1) subaverage intellectual functioning; (2) onset before age twenty-two; and (3) adaptive-skills limitations," in addition to the criteria under A, B, C, or D of Section 12.05. *Hayes v. Com'r of Soc. Sec.*, 357 Fed. Appx. 672, 675 (6th Cir. 2009). "Adaptive functioning" involves an individual's "effectiveness in areas such as social skills, communication, and daily living skills, and how well the person meets the standards of personal independence and social responsibility expected of his or her age by his or her cultural group." *Heller v. Doe by Doe*, 509 U.S. 312, 329, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993), citing Diagnostic and Statistical Manual of Mental Disorders, pp. 28–29 (3d rev. ed.1987).

In this case, the ALJ found that although Plaintiff had "low borderline" intellectual functioning, she did not meet or equal the Listing. The ALJ acknowledged that an IQ examination in January 2000 yielded a verbal IQ of 71, performance IQ of 75, and a full

scale IQ score of 70 – the last of which is within the qualifying range defined by Listing 12.05C. However, the ALJ deemed that IQ result not to be "valid," because the examining consultant, Dr. Nelson, noted that the results were produced at a time when the Plaintiff was complaining of nausea. (Tr. 20). The ALJ further reasoned that Plaintiff did not meet the Listing because she

> was 36-years of age at the time of this evaluation, and there is nothing in the evidence to demonstrate or support onset of impairment before age 22. In addition, claimant does not have a physical or other mental impairment imposing an additional and significant work-related limitation of function required of this listing.

(*Id.*). Last but not least, the ALJ took note of other psychological test results and daily activities relevant to adaptive functioning that supported his conclusion that Plaintiff did not meet or equal the Listing.

### a. Four Asserted Errors in Step 3 Listing Analysis

Plaintiff argues that the ALJ's analysis reflects four errors. First, Plaintiff contends that Dr. Nelson himself did not explicitly deem the test results invalid, but rather, stated only that the results "*may* be somewhat lower because this [IQ test] was administered during the first testing when she was reportedly more nauseous." (Tr. 255, emphasis added).

Plaintiff heavily relies on the unpublished *Dragon v. Com'r of Soc. Sec.*, 470 Fed. Appx. 454, 2012 WL 987758 (6th Cir. March 26, 2012) to support her contention that it is reversible error for an ALJ to invalidate an otherwise qualifying IQ score in the absence of explicit invalidation by the examiner. In that split decision,[1] the Sixth Circuit

---

[1] Judge Boggs dissented from the portion of the opinion that determined benefits should be awarded, explaining that he would remand for further fact-finding concerning the "close and contested issue" of whether Dragon was "'of borderline intellectual functioning as opposed to mentally retarded.'" Id. at 12.

9

reversed and remanded for an immediate award of benefits under Listing 12.05. The appellate court found that Dragon (whose had an IQ score of 50) had presented "significant" evidence of deficits in adaptive functioning, including similar low IQ scores at age 12 that the ALJ improperly ignored, and a host of other validating school records. Thus, substantial evidence did not exist to invalidate the IQ scores. Aside from the fact that the court was focused on the issue of when an ALJ can invalidate IQ scores, *Dragon* is distinguishable because there, the plaintiff presented ample evidence of deficits in adaptive functioning. In addition, unlike *Dragon*, in this case Plaintiff's IQ scores are at the very top of the "mild" retardation range. Dr. Nelson also diagnosed borderline intellectual functioning rather than mental retardation, strongly implying the invalidity of the single lower score. (Tr. 257).

Plaintiff's argument rests tenuously on a few statements in Dr. Nelson's report that counter the conclusion that the single low score was invalid, particularly Dr. Nelson's conclusion that "the chances that the range of scores from 67 to 75 include her true IQ are about 95 out of 100." (Tr. 256). However, this statement and others cited by Plaintiff do not negate the ALJ's analysis insofar as the statements can (and were) reasonably read by the ALJ as evidence that the lone IQ score among Plaintiff's results that fell at the top of the listing range should not be considered to be a valid qualifying score, but instead that Plaintiff's IQ fell within the borderline range. (*See* Tr. 20). Even Plaintiff concedes that "some of the objective findings [by Dr. Nelson] are consistent with borderline intellectual functioning, or, in a few areas, even low average function." (Doc. 12 at 3, n.3). *Accord Bailey v. Com'r of Soc. Sec.*, Case No. 1:12-cv-140, 2013 WL 2286962 (May 23, 2013)(Spiegel, J., holding that ALJ properly evaluated conflicting

evidence concerning Plaintiff's IQ scores, with several scores supporting a finding of borderline intellectual functioning despite additional scores below 70, including one score of 59).

Plaintiff's second complaint is that the ALJ erred by noting that there was no evidence to support onset prior to age 22. Plaintiff asserts that both "case law and general medical standards state that an adult's IQ is static over time," absent an intervening event such as brain injury. (Doc. 8 at 14). She extrapolates that her IQ at age 36 must therefore be the same as her adult IQ between the ages of 18 and 22. While Plaintiff accurately states a general principle, Sixth Circuit case law and the regulatory framework distinguish between IQ scores obtained during childhood, and those gleaned from adult testing.[2] *See Elam ex rel. Golay v. Com'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003), citing 20 C.F.R. §404, Subpt. P, App. 1 §112.00D. Notwithstanding the designation of legal adulthood at age 18, under the Social Security Act, a claimant is required to demonstrate the onset of symptoms prior to age 22. This slight discrepancy (between legal adulthood for other purposes at age 18, and a Listing reference to age 22) partly may be explained by scientific consensus concerning neurological development, which generally holds that frontal lobe development is not complete until approximately well into the 20's.[3] Regardless of the reasons, the ALJ did not err in pointing out that the language of Listing 12.05C requires onset prior to the age of 22. Although some courts, including one unpublished Sixth Circuit case, have allowed IQ tests taken after the required onset date of 22 to be used to establish

---

[2] With the exception of the unpublished *Dragon*, Plaintiff relies on non-binding case law from other circuits.
[3] See,e.g.http://www.hhs.gov/opa/familylife/tech_assistance/etraining/adolescent_brain/Development/prefrontal_cortex/, accessed on June 14, 2013.

11

disability under the listing, other decisions, including published Sixth Circuit authority, demonstrate far less willingness to do so. *See Foster*, 279 F.3d at 355 (holding that plaintiff failed to show intellectual functioning was "significantly subaverage" prior to age 22, where first IQ testing was not until age 42). Ironically, the new records obtained by Plaintiff after her evidentiary hearing undercut Plaintiff's argument, because they reflect a higher and non-qualifying adolescent IQ score of 76.

Third, Plaintiff argues that the ALJ erred in stating that she does not have a "physical or other mental impairment." (Tr. 20). Plaintiff is correct that the ALJ's statement was inconsistent with other findings that reflect severe physical impairments. (Tr. 3, 21). The ALJ should re-examine this issue on remand.

Fourth, Plaintiff complains that the ALJ's analysis of her "present" adaptive functioning was improper. She points out that the ALJ did not *explicitly* discuss the issue of Plaintiff's deficits in adaptive functioning, notwithstanding his discussion of many components correlated with the element of adaptive functioning. Plaintiff also relies on *Brown v. Sec'y of HHS*, 948 F.2d 268 (6th Cir. 1991), in which the Sixth Circuit held that activities of daily living similar to those in which Plaintiff engages were not "inconsistent" with a finding that a plaintiff has the requisite deficits in adaptive functioning. Plaintiff additionally argues that Dr. Nelson's report that her appearance was "somewhat untidy" and that her hair was "unkempt" supports a finding that she had the requisite present deficits in adaptive functioning.

Because remand is required for other reasons, the undersigned notes only that remand would not be supported by this alleged "error" alone. Dr. Rosenthal's report, which was properly relied upon by the ALJ, provides strong support for the ALJ's

12

determination that Plaintiff did not have the requisite present deficits in adaptive functioning to meet or equal Listing 12.05C. It is worth noting that *Brown* was decided prior to the emphasis on adaptive functioning highlighted in *Foster*. In addition, unlike *Brown*, this record contains evidence that Plaintiff has "borderline intellectual functioning," with no mental health professional opining that Plaintiff is retarded. Notwithstanding *Brown*'s conclusion that a certain level of activity is not "inconsistent" with mild mental retardation, ample post-*Brown* case law establishes that where evidence exists that a plaintiff has been able to live independently and maintain full-time employment for many years, as in this case, an ALJ's decision that a plaintiff does not meet Listing 12.05, based on her level of adaptive functioning, generally will be upheld as supported by substantial evidence. *See Bailey v. Com'r of Soc. Sec.*, 2013 WL 2286962 at *6 (collecting cases); *West v. Com'r of Soc. Sec.*, 240 Fed. Appx. 692, 698 (6th Cir.2007) (citing *Heller*, and holding that plaintiff who held a longterm, full-time job, with many activities of daily living, did not show deficiencies in adaptive functioning).

### b. Plaintiff's Sentence Six Arguments

Acknowledging that a claimant must also show the manifestation of deficits in adaptive functioning prior to the age of 22, Plaintiff argues that school records support that finding. (Tr. 229-241). While limited evidence of Plaintiff's records was presented to the ALJ, Plaintiff explains that her attorney was able to obtain more complete school records following the hearing. Ordinarily, this Court's review is limited to evidence that was before the Commissioner during administrative proceedings. However, an exception exists in the Act for evidence that is new and material, so long as the Plaintiff demonstrates good cause for not submitting the evidence in the prior proceeding. *See*

*Cline v. Com'r of Soc. Sec.,* 96 F.3d 146, 148 (6th Cir. 1996). Plaintiff contends that in this case, the recently obtained school records constitute new and material evidence for which remand under sentence six of 42 U.S.C. §405(g) is appropriate.

Plaintiff presented the school records to the Appeals Council, but that body declined review. Therefore, the records are "new" because they were not considered prior to the final decision of the Commissioner. The degree to which the records are "material" is debatable, however, given that the childhood IQ score was well above the range required by Listing 12.05C and therefore not likely to alter the Commissioner's decision. *Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988). On the other hand, some of the records are arguably "material" to the separate issue of Plaintiff's adaptive functioning prior to the age of 22.

In addition to the school records, Plaintiff seeks remand under sentence six for review of additional medical records concerning her orthopedic impairments. Plaintiff persuasively argues that those records are both new and material. She asserts that the record reflects "good cause" for her failure to earlier present the records, because her prior attorney was unable to obtain the records despite a "valiant effort" to do so, and "even ALJ Kelly was unable to get Dr. Smith's office to cooperate with a subpoena duces tecum." (Doc. 8 at 21). Defendant disputes only the materiality of the new records; Defendant does not dispute that Plaintiff has demonstrated good cause for her failure to present them to the ALJ.[4]

---

[4] The record reflects that prior counsel made multiple attempts to obtain the records prior to the hearing, and eventually issued a subpoena duces tecum to Dr. Smith. Dr. Smith's office failed to comply with that subpoena. The ALJ stated that he would go forward with the case, but would consider Dr. Smith's failure to comply as "obstruction." (Tr. 44-45).

14

Given the conclusion that Plaintiff is entitled to a remand for additional review of Dr. Smith's records, and the relatively close issue concerning whether the Plaintiff's school records are equally "material," the undersigned will recommend that the Commissioner review both sets of records under sentence six on remand. In making this recommendation, the undersigned would note that both the statute and relevant case law confirm that this Court retains jurisdiction when a social security appeal is remanded under sentence six. *See Marshall v. Com'r of Soc. Sec.*, 444 F.3d 837, 841 (6th Cir. 2006)(explaining that the district court retains jurisdiction following sentence six remands which do not involve a final judgment, but not for sentence four remands which involve a final judgment). Thus, to the extent that the presiding district judge adopts the recommendation to remand under sentence six, no "final judgment" can be rendered by this Court, and this Court will continue to retain jurisdiction.

In *Melkonyan v. Sullivan*, 501 U.S. 89, 111 S.Ct. 2157 (1991), the Supreme Court explained that remand is authorized only under sentence four *or* sentence six of the Social Security Act. The two types of remand are mutually exclusive. While not pertinent to the issues currently presented, the difference between the two types of remands under the Social Security Act is relevant for purposes of appeal, and may become relevant in the context of resolving any future petition under the Equal Access to Justice Act ("EAJA"). *Marshall,* 444 F.3d at 842. Most such fee petitions are filed by a "prevailing party" who obtains a sentence four remand, claiming fees for a limited time period between the filing of the civil complaint and the remand/corresponding judgment

by this Court.[5]  A sentence four remand is immediately appealable to the Sixth Circuit, but a sentence six remand obviously is not since it is not a final judgment.

Also unlike a sentence four remand, a sentence six remand "is not a sufficient basis for a litigant to claim 'prevailing party' status."  *Id.*; *see also Scales v. Astrue*, Case No. 1:10-cv-267, 2012 WL 628407 (S.D. Ohio Feb. 27, 2012).  Therefore, a litigant who obtains a sentence six remand must obtain success during subsequent administrative proceedings in order to claim "prevailing party" status for purposes of the EAJA,[6] and may be required to append the record of subsequent administrative proceedings in order for this Court to determine whether the Commissioner's position in those proceedings was "substantially justified" under the EAJA.

### III. Conclusion and Recommendation

Under sentence four, this Court may reverse and direct an immediate award of benefits, or simply direct the Commissioner to reconsider the evidence to correct factual and/or legal error.  Because a sentence six remand is pre-judgment, remand under that provision requires a new hearing.  Even if remand was directed only under sentence four, the above discussion should make clear that this is not a case in which remand for an immediate award of benefits is appropriate.

---

[5] In addition to an EAJA award for a remand under sentence four, Rule 406(b) under the Social Security Act itself authorizes a motion for an additional fee award should the Plaintiff be granted benefits following remand.  Because such motions often are not filed for years after a case is closed in this Court, presenting jurisdictional issues, this Court recently adopted a rule of equitable tolling under Rule 54(d)(2) to hold that a Rule 406(b) motion filed within 14 days of Notice of an award will be considered timely.  *See Proctor v. Com'r of Soc. Sec.*, Case No. 1:09-cv-127, WL (Feb. 19, 2013).

[6] The EAJA provides for a fee award only for fees incurred in a "civil action," generally construed as time spent in federal court.  See 28 U.S.C. §2412(d)(1)(A).  Time spent in administrative proceedings ordinarily is compensated under different provisions of the Social Security Act itself, rather than under the EAJA, see 42 U.S.C. §406(a) and (b).  An exception exists for time spent in administrative proceedings after a

Accordingly, **IT IS RECOMMENDED THAT:**

1. The decision of the Commissioner to deny Plaintiff SSI benefits be **REVERSED** because it is not supported by substantial evidence in the record as a whole;

2. This case should be remanded pre-judgment under sentence six for consideration of new and material evidence not previously presented, as well as for reconsideration of the additional errors discussed herein. Regardless of the administrative status of this case, the Court will retain jurisdiction until following the entry of judgment after remand;

3. Should the presiding district court decline to remand under sentence six, this case alternatively should be remanded post-judgment pursuant to sentence four for reconsideration of the evidence in light of the errors noted, but without consideration of new evidence not previously considered by the ALJ.

                                                                       */s Stephanie K. Bowman*
                                                                       Stephanie K. Bowman
                                                                       United States Magistrate Judge

---

sentence six remand, based upon the continuing jurisdiction of this Court under sentence six.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

TAMMY SUTTLES,   Case No. 1:12-cv-658

    Plaintiff,   Spiegel, J.
   Bowman, M.J.
  v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R.  That period may be extended further by the Court on timely motion by either side for an extension of time.  All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections.  A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).